UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUN 1 5 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CRIMINAL ACTION NO. 05-54-KSF

UNITED STATES OF AMERICA PLAINTIFF

V. **OPINION & ORDER**

JOSE ANTOINE KEMPER and DEFENDANTS
HORATIO LONG KEMPER

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the defendants' motion to suppress [DE #19]. Having been fully briefed, this matter is ripe for review.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The defendants seek to suppress all evidence seized from the search of 317 Stearns Avenue, Paris, Kentucky, and from all vehicles and persons searched at said location. On March 10, 2004, Detective Thomas Beall sought a search warrant for the residence, vehicles and persons located at the 317 Stearns Avenue residence. The warrant sought to recover a .45 caliber pistol, ammunition, shells, cell phones and clothing that could have trace evidence related to a homicide investigation in Winchester, Kentucky.

The homicide investigation commenced after Rigoberto Arzola was found dead on December 27, 2004 at the rear parking area of Lowes in Winchester. During the investigation, Arzola's fiancee, Serena Hardin, stated that Arzola went to Winchester to meet with Jose

Kemper to borrow money. According to Hardin, Jose Kemper and Arzola, along with numerous other individuals, were involved in a cocaine trafficking operation.

The affidavit and warrant were presented to Honorable Brandy Brown, Clark County District Court Judge. The search warrant was issued on March 10, 2005. After a search of the premises was conducted, a subsequent and detailed search warrant was issued by the Bourbon District Court on March 11, 2005, executed by Officer Shannon Parks.

The applicable portion of the affidavit for March 10, 2005 search warrant states:

> An interview was conducted with Rigoberto Arzola's fiancé [sic] Serena Hardin whom stated, "Rigoberto Arzola went to Winchester, Kentucky on the evening of 12-27-04 to meet with a man she knows as Jose Kemper for the sole purpose of borrowing money from him." Serena Hardin further advised detectives of a cocaine trafficking operation that Rigoberto and Jose Kemper were involved in along with numerous other individuals. Serena Hardin also stated that Rigoberto Arzola met with Jose Kemper on numerous other occasions in Winchester to transfer drug money and cocaine between the two of them.

This information was provided, presumably, to connect Jose Kemper to Arzola's murder. The affidavit also contains information surrounding a Drug Enforcement Agency (DEA) agent's investigation into the phone records of both Jose Kemper and Arzola on the date of Arzola's murder. However, there is no information provided connecting either of these phone lines to the 317 Stearns Avenue residence.

## II.   ANALYSIS

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.

2004) (*en banc*) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998). An affidavit does not provide a substantial basis for the issuing judge's conclusion that probable cause existed to search a residence, if the affidavit fails to set forth sufficient facts that incriminating evidence would be found *there,* rather than in some other place. *Carpenter*, 360 F.3d at 594. In the instant case, there are no allegations or facts contained in the affidavit as to any nexus between the alleged criminal activity and the Stearns Avenue residence. Thus, the Court concludes that the state judge lacked a substantial basis for concluding that a search would uncover evidence of the alleged criminal activity at the Stearns Avenue residence.

The government contends that even if probable cause did not exist for the search, the good faith exception to the exclusionary rule should apply. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court determined that the exclusionary rules should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *Id.* at 918-921. There are four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role; (3) where the affidavit was so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more that a "bare bones" affidavit; and (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Van Shutters,* 153 F.3d 331, 337 (6th Cir. 1998).

3

In this case, the government asserts that the police officers who executed the search were acting in objectively reasonable reliance on the warrant. The government claims that Detective Beall verbally advised the judge of the nexus connection between the residence and the defendant. Attached to its response, the government filed an affidavit of District Court Judge Brown that states, "It is my recollection that during the course of my conversations with Det. Beall, [he] advised me that the Winchester Police Department believed the residence at 317 Stearns Ave. was either the residence of Jose Kemper or that he was staying there with someone else, at the time of the warrant." The government does not contend that Detective Beall's conversation with District Court Judge Brown was under oath. Thus, the Court will assume that the conversation between Detective Beall and District Court Judge Brown did not constitute sworn testimony by Detective Beall.

The government, citing two unpublished cases, argues that the Sixth Circuit has found that unsworn testimony can be considered in a good faith analysis. In both of the cases cited by the government, the Sixth Circuit states that although probable cause affidavits are not to be supplemented with unsworn statements, such unsworn statements can be considered when determining whether a good faith exception should apply. *See United States v. Evans*, 12 F.3d 215 1993 WL 476983 (6th Cir. 1993) (unpublished decision); *United States v. Parker*, 4 Fed. Appx. 282, 2001 WL 128309 (6th Cir. 2001) (unpublished decision).

However, a recent Sixth Circuit opinion appears to have called these cases into question. *See United States v. Laughton*, – F.3d –, 2005 WL 1281867 (6th Cir. (Mich.) May 17, 2005). In *Laughton*, the Sixth Circuit concluded, "that a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit. Whether an

4

objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in the affidavit." *Id.* at *6. The Court, thus, held that "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Id.* at *6.

Pursuant to *Laughton*, this Court may not consider Detective Beall's unsworn testimony to District Court Judge Brown that the defendant either lived at or was staying at the Stearns Avenue residence. Since this information was not included in the affidavit, the good faith exception to the exclusionary rule does not permit this Court's consideration of Detective Beall's unsworn testimony.[1]

Additionally, even if the affidavit had stated that Jose Kemper was living or staying at the Stearns Avenue residence, such a statement may not have provided the requisite nexus between the criminal activity and the residence. Without any nexus between the criminal activity and the residence, reliance upon this warrant would be completely unreliable and would place it beyond

---

[1] Factually, there is a distinction between *Laughton* and the instant case. In *Laughton*, the Sixth Circuit was faced with the issue of whether information known to an officer but not conveyed to the magistrate has any relevance to the validity of the search. In the instant case, the officer conveyed the information to the district court judge by providing unsworn testimony. The holding in *Laughton*, however, still applies to the instant case. In *Laughton*, the Sixth Circuit found that determinations of both good faith reliance and probable cause are bound by the four corners of the affidavit. Thus, an unsworn oral statement by an officer would not suffice under either analysis. The Sixth Circuit has previously found that sworn statements, but not unsworn statements, may supplement probable cause affidavits. *See Tabasko v. Barton*, 472 F.2d 871, 874 (6th Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973); *United States v. Harris*, 255 F.3d 288 (6th Cir. 2001). *Laughton* confirms that unsworn statements may not be used to supplement either probable cause affidavits or a good faith exception to the exclusionary rule.

the good faith exception. In *Laughton*, the Sixth Circuit found that the affidavit in support of the search warrant simply stated the address of the premises to be searched, a summary of the deputy's professional experience, and two "acontextual allegations" against the defendant. The allegations contained in the affidavit in the application for a search warrant stated, "Through the course of this investigation your Affiant has learned that James Howard Laughton will keep controlled substances/drugs in the crotch area of his pants and in his pants pockets. Further that there are various stashes around the home." The affidavit also stated that a confidential informant made multiple purchases of Methamphetamine in the previous 48 hours and that the affiant observed these purchases. The Sixth Circuit concluded that the affidavit lacked "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id.* at *4.

In *Laughton*, the affidavit included a reference to the place to be searched containing "various stashes", presumably of Methamphetamine. In the instant case, as stated above, the affidavit connects Jose Kemper to the alleged murder through a statement by Arzola's fiancee, Serena Hardin. Hardin also stated that Jose Kemper and Arzola were involved in a cocaine trafficking operation, but did not mention how such an operation was connected with the residence. The affidavit does not state when Hardin gave police the statement, raising the possibility that the information was stale. Moreover, the affidavit states that a DEA agent had identified several phone calls made between Arzola and Kemper's phone numbers around the time of Arzola's death. Again, the affidavit does not connect either of these phone numbers with the residence to be searched. There is absolutely no information in the affidavit connecting the residence to the criminal activity at issue. Under *Laughton*, even if the Court considers Detective

Beall's statement that Kemper was staying at the residence, there would still need to be some type of evidence connecting the *criminal activity*, not just the suspect, to the place to be searched.

Finally, the defendants argue that the information contained in the affidavit was stale, therefore, reliance upon this warrant was completely unreliable. The defendants assert that the evidence sought, particularly evidence of clothing containing traces of blood and shell casings, is evidence that would have been disposed of immediately after the commission of a crime. Arzola was murdered on December 27, 2004, yet the warrant was not executed until March 19, 2005. The evidence sought in the search was evidence connecting Jose Kemper to the murder of Arzola. The question of staleness depends on the "inherent nature of the crime." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988). Further, a district court should consider the following four factors in determination whether a probable cause finding is stale: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Helton*, 314 F.3d 812, 922 (6th Cir. 2003) (citing *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir. 1995) (*en banc*)). Here, the alleged crime was not of a continuous nature. Moreover, the evidence sought was evidence pertaining to an alleged homicide. It was an unreasonable expectation that officers would discover a .45 caliber pistol allegedly used in the murder and other evidence connected to a murder more than two months after the alleged homicide. *See United States v. Charest*, 602 F.2d 1015 (1st Cir. 1979) ( "A sixteen day lag between the commission of a murder and the issuance of a search warrant for a murder weapon of this type is too long for a finding of probable cause that the gun will still be located on defendant's premises.").

Since the March 10, 2005 search warrant was not supported by probable cause and the good faith exception to the exclusionary rule is not applicable to the circumstances surrounding the search, the Court will suppress evidence recovered under the March 10, 2005 warrant. The March 10, 2005 search warrant is invalid, thus, it follows that the March 11, 2005 search warrant is also invalid. On March 10, 2005, Detective Beall and the Paris Police Department executed the first search warrant and recovered a quantity of suspected marijuana from the pants pocket of Horatio Kemper and a quantity of suspected cocaine from the pants pocket of Jose Kemper. The search was suspended while Paris Police obtained the March 11, 2005 search warrant for the residence, vehicle and persons for drugs, drug proceeds, paraphernalia and other drug trafficking evidence. Since the information contained in the affidavit in support of the March 11, 2005 search warrant was gathered during an unlawful search of the residence, the evidence recovered pursuant to the March 11, 2005 search warrant should also be suppressed. The Court will, therefore, grant defendants' motion to suppress.

### III.  CONCLUSION

For the foregoing reasons, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that the defendant's motion to suppress [DE #19] is GRANTED.

This ___ day of June, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE